## McGovern *et al. versus* Lewis.

1. The plaintiff made a contract with defendants to tow two boat-loads of coal by the first rise in the river; the defendants refused to tow them; the boats, remaining at their moorings, were struck by a raft set afloat by a sudden rise in the river, and sunk, without neglect of the plaintiff. *Held,* that the defendants were not liable for the loss of the boats and coal.

2. The contract was to tow the boats from Pittsburg to Oil City, and the plaintiff was unable to procure other tows. *Held,* that the measure of damages was the difference between the value of the boats and coal at Pittsburg and at Oil City.

November 8th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Allegheny county :* No. 60, to October and November Term 1867.

This was an action on the case by David H. Lewis against James McGovern and James Rees; the writ was issued March 6th 1866.

The plaintiff declared in three counts: First. That he contracted with the defendants to tow to Oil City and there deliver to him two flatboats loaded with coal on the first rise in the river, and that they refused to do so, whereby the plaintiff lost the sale of his flatboats and coal and the profits therefrom, and that by reason of the refusal to perform their contract, the boats and coal were wholly sunk and lost, whereby the plaintiff lost a large sum of money and paid a large sum further in endeavoring to save them. Second. The plaintiff averred the failure of the defendants to perform their contract, by which he lost the sale of his coal and boats at Oil City and the profits therefrom. Third. The plaintiff alleged that defendants, on the 1st of November, knowing that there was great demand for towage from Pittsburg, on the Allegheny river, during the fall rise and a scarcity of towboats, that flatboats if not taken up on the fall rise of the river could not be taken till the opening of the navigation thereafter, that flatboats laden with coal left at Pittsburg through the winter would be subjected to great peril from the rises in the rivers and from rafts, &c., and that the plaintiff resided in Oil

City, agreed to tow plaintiff's two flatboats laden with coal, then lying on the shore opposite Pittsburg, to Oil City on the first rise of the Allegheny river, but that although there was a rise in the river during the month of November, the defendants refused to perform their contract; that the plaintiff was unable to procure any other towboat, although he made efforts to do so, and was therefore compelled to leave his boats and coal where they were lying, and that in the following December they were sunk by reason of a freshet in the river; and laying his damages for the loss of the boats and coal and the cost of endeavoring to save them.

The plaintiff gave evidence of the contract, as laid in his declaration, of a rise in the river in November or December, of the defendants having been applied to during the rise to take the boats, of their refusal, of their having towed and freighted iron at that time from Pittsburg to Oleopolis, above Oil City; of the loss of the boats and coal by a floating raft during the rise, of the value of the boats and coal and of the difference in the prices of coal and boats at Oil City and Pittsburg.

The defendants took exception to the admission of evidence in the court below, and also submitted points. The opinion of the Supreme Court makes it necessary to notice only the following part of the charge of Stowe, A. J., which denied the positions taken in their points:—

"If the jury believe the evidence of Barry, there was a contract that defendants should take the plaintiff's boats of coal to Oil City on the first rise of water, and the defendants subsequently refused to do so. In this case there is a breach of contract which renders defendants liable for the difference in the value of the coal at Pittsburg and Oil City at the time the boats would have arrived there if the contract had been performed, less the cost of getting it there, which in this case appears to have been fixed at twenty-five cents per bushel. This also applies to the boats. If they were worth more at Oil City than at Pittsburg at the time defendants by their contract were to have had them there, then plaintiff is entitled to recover the difference.

"The claim for further damages arising out of the subsequent loss of the boats, coal and equipments, by means of a raft being carried by high water against them, breaking them loose, and their subsequent sinking and loss, is entirely untenable. There can be no possible connection between the breaking of a contract of towage, as alleged, and the subsequent loss of plaintiff's boats by flood and a drifting raft."

The judgment was for the plaintiff for $939.68.

The defendants took a writ of error, and assigned for error the denial of their points.

[McGovern v. Lewis.]

*John Barton*, for plaintiffs in error, referred to Collins *v.* Baumgardner, 2 P. F. Smith 461 ; O'Conner *v.* Foster, 10 Watts 418.

*T. Macconnell & Son* and *S. & S. C. Schoyer*, for defendant in error, referred to O'Connor *v.* Foster, Collins *v.* Baumgardner, *supra ;* Hoy *v.* Grenoble, 10 Casey 10 ; Adams Express Co. *v.* Egbert, 12 Id. 364 ; Masterson *v.* Mayor of Brooklyn, 7 Hill 62 ; Bazin *v.* Steamship Co., 3 Wallace, Jr

The opinion of the court was delivered, January 7th 1868, by

READ, J.—Referring to the law as laid down in Fox *et al. v.* Hayward, just decided, it is only necessary to quote two sentences from O'Conner *v.* Foster, 10 Watts 421. "The defendants," says Judge Sergeant, "contend that the damages should be merely nominal unless the plaintiffs show that they could not get the wheat carried by some other person. But we think it is the duty of the defendants to do this if practicable, and not of the plaintiff."

The plaintiff claimed damages for the loss of his coal and boats by the sudden rise of the Monongahela river, and this the court directly negatived, and declared to be entirely untenable. The other claim was upon a breach of contract to tow the plaintiff's boats of coal to Oil City from Pittsburg on the first rise of water, and the defendants subsequently refused to do so. It was also in evidence that upon the refusal of the defendants to tow in pursuance of their contract, after various attempts to procure another tow, it was found that all the other towboats were engaged, and that it was impossible to get any boats to take them, and this was not denied or disputed by the defendants. The price of coal at Oil City was very high at that season ; the whole supply for the enormous operations in the oil regions coming from Pittsburg, and the demand for flatboats to be used in floating oil to Pittsburg, was also very greatly in excess of their value at Pittsburg.

The court charged the jury : " In this case there is a breach of contract which renders defendants liable for the difference in the value of coal at Pittsburg and Oil City at the time the boats would have arrived there if the contract had been performed, less the cost of getting it there, which in this case appears to have been fixed at twenty-five cents per bushel. This also applies to the boats. If they were worth more at Oil City than at Pittsburg at the time defendants were by their contract to have had them there, then plaintiff is entitled to recover the difference."

In this we discover no error, and the defendants pay the penalty for preferring another tow at a higher and more profitable rate.

　　　　　　　　　　　　　　　　Judgment affirmed.